

DEFENDANT'S EXHIBIT I

**CELESTE N. SHULER, Ph.D.**
Licensed Psychologist
PO Box 237 ~Bristol, FL 32321
Cell: (850) 643-7656
Office: (850) 674-1151
docshuler@gmail.com

## PSYCHOSEXUAL RISK EVALUATION

### Identifying Information:

Name:              Joaquin Herrera (age 30 years)
Case Number:       5:19-CR-68-TKW-MJF
Jurisdiction:      US District Court Northern District of Florida
Evaluation Date:   10/13/2020

### Referral Information:

Joaquin Herrera is a 30-year-old male referred to me for a confidential Psychosexual Risk Assessment by his attorney. Mr. Herrera is reportedly charged with four counts of Production of Child Pornography and one count of Possession of Child Pornography. I was asked to provide diagnostic impressions regarding Mr. Herrera and determine his re-offense risk.

### Evaluation Procedure and Purpose:

I conducted an evaluation of Mr. Herrera while he was in custody at Washington County Jail. The following procedures were utilized in the assessment process:

Interview and mental status examination of Mr. Herrera
Psychosexual interview
Review of available records, including court documents and other data
Administration of the Static-99R

### Notification of Confidentiality:

Mr. Herrera was informed as to the purpose of this evaluation and as to the limited nature of confidentially. Specifically, he was informed that I was conducting a confidential evaluation at the request of his attorney. He was aware that information obtained from the assessment process would be compiled into a report and furnished to his attorney, exclusively. He understood this information might be provided to the Judge and to the State Attorney at the discretion of counsel. Mr. Herrera proceeded with the evaluation in light of the potential limits of confidentiality.

**Relevant Information:**

The following information was obtained through interview of Mr. Herrera and a review of the available records.

Joaquin Herrera reported that he was born in New York and raised in Puerto Rico. He stated that he lived mostly with his grandmother until she passed away when he was age 12. He then lived with his mother until his mother left Puerto Rico when Mr. Herrera was age 15. He lived with an uncle for a short period of time and then joined some extended family members in New Jersey at age 16. Mr. Herrera reportedly remained in New Jersey until reaching adulthood. He stated that he had a limited relationship with his father while growing up. He denied any history of physical abuse but stated that he was sexually abused as a child.

Mr. Herrera reported a high school education followed by some college and vocational training. He denied any history of learning disability. He has reportedly received training in a few different allied health related fields. He reported that his primary employment has been in a health care setting.

Mr. Herrera denied any criminal history prior to his arrest on the index offenses.

According to Mr. Herrera, he has never married but has been involved in two long-term relationships with significant others. He reported the longest he has ever lived with a partner was for four years. He reported that he has fathered children with "three baby mothers."

With regard to mental health history, Mr. Herrera stated that he was diagnosed with anxiety around the age of fifteen and has received treatment off and on since that time. He stated that he is currently being treated for symptoms of anxiety and depression by jail mental health providers. He indicated that he has used illicit drugs in the past to "self-medicate" when anxious. He reported one prior instance of attempted self-harm. Mr. Herrera reported that his mental health condition seems to have improved with treatment.

Mr. Herrera stated that he has a history of abusing cocaine and methamphetamine. He stated that he has also used alcohol but to a lesser degree than his stimulant drug abuse.

**Mental Status Examination:**

Joaquin Herrera presented for the evaluation as an adult male of average size who appeared his chronological age. Overall level of grooming and hygiene was good. He was polite and cooperative during the assessment. He was oriented in all spheres. Attention and concentration capacities were adequate. He did not appear to be distracted either by internal or external stimuli. Insight and judgment were considered adequate. Speech productivity was within normal limits. Thought productivity was

within normal limits. He was relevant and goal directed in the information he provided. He denied experiencing hallucinations or delusions, and none were elicited. He denied suicidal or homicidal ideation. His mannerisms, gestures, and facial expressions were consistent with a normal emotional presentation, but he reported experiencing some situational depression. He denied any recent changes to vegetative function.

**Allegations:**

According to available information (Statement of Facts, dated 9/3/2020), Mr. Herrera was accused of having an eight-year-old female neighbor undress under the pretense of having her try on a swimsuit, and allegedly touched and took photos of the victim's exposed vaginal area while she was in his apartment. These events reportedly took place on April 28, 2019. Investigators recovered a cellular telephone that was reportedly found in Mr. Herrera's possession. A search of that phone allegedly revealed video of Mr. Herrera sexually molesting two additional female child victims. The victims were a six-year-old girl and an eleven-year-old girl. Mr. Herrera described these children as his "daughter, step-daughter, and her friend". The videos and photos appeared to have been created during April of 2019. Mr. Herrera reportedly confessed to taking pictures of the six-year-old victim. During the current interview, he took some responsibility for his actions; however, he expressed that he was using drugs heavily around the time of the alleged offenses and had little memory for the events that took place.

**Psychosexual Interview:**

Joaquin Herrera stated he had his first sexual encounter during adolescence with a same aged girlfriend. He admitted to engaging in numerous sexual relationships over the course of his lifetime. He considers two of his partners to have been significant relationships although he has never been married. He stated that he was in love with both partners. He does admit to periods of infidelity. He reported a history of suffering from three instances of childhood sexual abuse.

He indicated he has used pornography in the past but does not currently do so. He reported that he currently masturbates about once monthly while thinking about his prior girlfriend. The only pornography he reported watching is a genre involving adult males and females engaged in consensual sex. He stated that he has never looked at any child porn in addition to the index offenses. He stated that he has never watched porn related to beastiality, or other paraphilic interests. He stated that he has never watched pornography that involved rape themes.

He denied any history of engaging in voyeuristic conduct. He stated that he has never hired a prostitute for sexual favors. He denied ever soliciting relationships on computer sites for casual sexual encounters. He has never had sex with an animal. He indicated his only sexual interest is similar age females. He stated that he has never engaged in sexual violence towards a female in any form. He stated he has never been in trouble for any kind of sexual misbehavior before his instant cases. He indicated that he does

not believe he has any kind of sexual issue. He denied experiencing attraction to children.

**Actuarial Results:**

<u>Static-99R</u>: This actuarial measure helps clinicians identify high risk sexual offenders. The individual is scored on a number of variables and is compared to a large sample of over 4000 sexual offenders. In this way, we can identify the sexual offenders that have the variables on the actuarial scale that make them high risk. Most sexual offenders are not high risk for sexual re-offense. On this instrument, individuals who score a 6 or above are considered high risk. Most sexual offenders score a 2 on this instrument. This is known as the typical or routine offender. When this instrument was administered to Joaquin Herrera, he earned a score of 2. This is a typical or routine score and represents relatively low risk for sexual re-offense.

**Dynamic Considerations:**

Beyond the actuarial measure, there are dynamic considerations utilized to suggest an aggravation or mitigation of general risk. Dynamic factors are as follows:

**Significant Social Influences:** Mr. Herrera reported that he has a number of social supports. These social supports are non-criminal people who are involved in his life. The presence of these social influences should mitigate risk.

**Capacity for Relationship Stability:** Mr. Herrera appears to demonstrate some capacity for relationship stability. He reported a prior relationship with his child's mother that lasted for several years.

**Emotional Identification with Children:** Mr. Herrera did not report any information that would suggest he emotionally identifies with children. He did not present as immature. He did not report any information to suggest a tendency toward gravitating to children.

**Hostility Towards Women:** I do not see any indication in the record or via Mr. Herrera's self-report that he engages in hostile actions toward females.

**General Social Rejection/Loneliness:** Mr. Herrera reported that he has friends with whom he engages socially. He denied that he feels isolated or lonely in any way. While he does report currently feeling "depressed", he attributes those feelings to situational distress.

**Impulsive Acts:** There is evidence from Mr. Herrera's past that would suggest a history of impulsivity. Mr. Herrera expressed regret over his past.

**Poor Cognitive Problem Solving:** Again, Mr. Herrera's past is indicative of poor decision-making skills. He did report some insight into his actions and expressed that he has made poor choices that lead to his current circumstances.

**Negative Emotionality/Hostility:** Mr. Herrera denied the presence of any current hostility. While he does report a history of adverse childhood experiences, Mr. Herrera appears to be open and honest about this issue. His willingness to discuss his childhood history and prior instances of abuse suggests some degree of prosocial attitudes regarding his experiences.

**Sex Drive/Preoccupation:** Mr. Herrera does not endorse excessive masturbation or preoccupation with sexual thoughts. He does not describe himself as a regular pornography user.

**Sex as Coping:** Based on the information provided, this does not appear to be a current area of significant concern for Mr. Herrera. However, it is worth noting that Mr. Herrera was experiencing some stressors around the time of the alleged offenses, such as unemployment. He does attribute increased drug use to stress.

**Deviant Sexual Interest:** Mr. Herrera denied the presence of any deviant sexual interest, including an attraction to children. It seems that his prior offense history was probably more related to impulsivity and poor decision-making skills as opposed to true paraphilic interest.

**Cooperation with Supervision:** Mr. Herrera reported that he has no prior history of supervision.

**Diagnostic Impressions:**

- Stimulant Use Disorder, Severe, In a Controlled Environment
- Unspecified Anxiety Disorder

Mr. Herrera reported a lengthy history of abusing stimulants, primarily cocaine and methamphetamine. He also reported suffering from anxiety since the age of 15. It should be noted that the alleged incidents that are the basis for this evaluation are not sufficient to suggest that he has any kind of paraphilic condition.

**Conclusions and Recommendations:**

Mr. Joaquin Herrera is a 30-year-old male referred to me for a Psychosexual Risk Assessment. He currently in custody at the Washington County Jail. He is alleged to have engaged in inappropriate sexual encounters with three female children

approximately eighteen months prior to this evaluation. The alleged victims were known to him, and one victim appears to have been a non-relative.

With regard to his risk of sexual re-offense, the actuarial scale suggests he is comparable to the routine or typical sexual offender, and dynamic factors appear to weigh on the side of mitigated risk. Overall, the risk analysis for Mr. Herrera suggests he is at relatively low risk for sexual recidivism. Mr. Herrera indicated that he would readily comply with any court-ordered community-based treatment opportunities. It would likely be beneficial for Mr. Herrera to participate in both mental health and substance abuse treatment.

Respectfully Submitted,

*[signature]*

Celeste N. Shuler, Ph. D.
Licensed Psychologist, #PY7459